ISOJIRO KITAGAWA· v. OLIVER T. SHIPMAN, TREASURER OF THE COUNTY OF HAWAII, AND COUNTY OF HAWAII.

No. 1974.

THE MANA TRANSPORTATION COMPANY, LIMITED, AN HAWAIIAN CORPORATION, v. OLIVER T. SHIPMAN, TREASURER OF THE COUNTY OF HAWAII, AND COUNTY OF HAWAII.

No. 1975.

ARGUED NOVEMBER 24, 1930.        DECIDED DECEMBER 30, 1930.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PERRY, C. J.

These are suits in equity praying for injunctions to restrain the respondent from collecting taxes, in the first on sixteen second-hand motor vehicles and in the second on twenty motor trucks. In the petition in the Mana Company's case it is alleged that the trucks are at the present time in its possession and are being used in its business of transportation of freight. In the petition in the Kitagawa case the allegations on this subject are as follows: "That the complainant is principally engaged    *    *    *    in the business of buying and selling motor vehicles, *  *  * and as a part of his necessary equipment and stock in trade *   *   * has on hand and is the owner of sixteen second-

hand motor vehicles, which * * * are deposited in his stock and sales room, and are not used upon the public highway. * * * That the complainant, in accordance with his usual course of business, has offered for sale and will hereafter continue to offer for sale the said sixteen motor vehicles, and that the same are of value to him only when they can be readily sold in the regular course of business."

Demurrers to the bills on the grounds that upon the facts stated the petitioners were not entitled to relief and that an adequate remedy was available at law, were sustained. From decrees dismissing the bills, the cases come to this court by appeal.

The statute under which the county treasurer, respondent herein, is seeking to collect the taxes on the automobiles and trucks is section 1306, R. L. 1925. That section provides: "All automobiles and other power driven vehicles (all such vehicles being hereinafter referred to as motor vehicles) shall be subject to an annual tax of one cent for each pound in weight of such motor vehicle, to be paid by the owners thereof, which tax shall be collected by the treasurer or his deputy, of the county or city and county as the case may be, and shall become due and payable on the first day of January and must be paid before the first day of March in each year. In determining the amount of tax for motor vehicles, the weight taken shall be that of such motor vehicles when in ordinary use and with all its accessories and fittings, including fuel and water." Partial exemptions are provided in favor of cars bought after January 1 of each year, vehicles brought into the Territory for temporary use by non-residents and new vehicles in stock for purposes of sale. The section further provides: "Upon receipt of such tax the treasurer or his deputy shall number and register such motor vehicle in the owner's name in a permanent record or book to be kept by him for

this purpose, and shall furnish the owner thereof with a receipt which shall show upon its face the license number of such motor vehicle, and shall state the fact that the tax has been paid thereon for the whole or the remainder of the current year in which the receipt is issued. The treasurer or his deputy shall also furnish the owner with two number plates for such motor vehicle with the number and year marked thereon, charging therefor in addition to the tax the sum of one dollar. The owner shall attach such number plates to such motor vehicle, one on the front and the other on the rear thereof, which number plates shall be securely fastened to the motor vehicle in such a way as to prevent such number plates from swinging and at a minimum of sixteen inches from the ground. All such number plates shall be so placed that they shall be plainly visible. * * * The treasurer shall immediately notify the sheriff of the county or city and county of numbers issued by him with a general description of the motor vehicle and the name and address of the owner to whom issued. The sheriff of the county or city and county shall record such numbers, description of motor vehicles and names and addresses of the owners to whom such numbers are issued in a permanent record or book to be kept by him for this purpose. * * * Any motor vehicle not having the number plates required by this section, or any motor vehicle upon which taxes are delinquent as hereinbefore provided, may be seized wherever found by the treasurer, his deputy or by any sheriff." Provision is also made for the sale of all vehicles seized and not redeemed within a time specified.

The contention of the complainants in support of these suits is that the statute "attempts to levy a 'property tax' based upon the weight of automobiles; that the weight of automobiles bears no relation whatsoever to the value of said automobiles; that should this tax be collected" the

complainants "would be denied the equal protection of the laws and deprived of" their "property without due process of law,"—contrary to the Fifth and Fourteenth Amendments to the Constitution. And that the statute also "attempts to charge the complainants' property for the use of the highways whether or not it is to be used upon the highways," and thus constitutes a denial of the equal protection of the laws and deprives the complainants of their property without due process of law.

Taxes on automobiles and motor trucks, measured by the weight of the vehicles, are no longer a novelty. They have been long resorted to in various jurisdictions and have been sustained by courts. The effect of motor vehicles on roads is far different from that which resulted from the passage of horse-drawn vehicles. For the use of motor vehicles, some carrying freight, some carrying passengers, some employed for purposes of business and others for purposes of pleasure, stronger and better roads have become necessary than those which sufficed before the advent of traffic of this kind. Roads sufficient to bear motor traffic are expensive to build and expensive to maintain. It is just that the vehicles which make necessary these huge expenditures should bear at least some part of the cost of construction and maintenance of the roads. A tax on motor vehicles, measured by their weight, is designed in part at least to secure compensation to the community that builds the roads and to secure it with some approach to a due proportion as between the vehicles or owners thereof who contribute the tax. A large truck carrying heavy loads of freight is far more destructive to the roadway than is a light automobile which carries passengers only.

The purpose of such a tax, however, is not merely to secure compensation to the government for the building and maintenance of the roads, but may also be to regulate,

under the police power. A larger and heavier automobile is ordinarily more difficult of control than a smaller one. It is also more destructive of other automobiles and of other property and of persons than is a light machine. Automobile accidents are frequent and the traffic requires a large measure of police surveillance as well as action by courts. These reasons may well actuate legislators in determining to impose a tax of this nature.

A tax imposed in accordance with the engine power of the vehicles attains substantially the same result and for the same reasons, for it furnishes a fair degree of measurement of the destructive power of the cars and the control of which they are susceptible.

The Maryland legislature by statute prescribed a comprehensive scheme for licensing and regulating motor vehicles. Registration fees were fixed according to horse power. The constitutionality of the Act having been drawn in question, the court said: "The movement of motor vehicles over the highways is attended by constant and serious dangers to the public, and is also abnormally destructive to the ways themselves. Their success depends on good roads the construction and maintenance of which are exceedingly expensive; and in recent years insistent demands have been made upon the states for better facilities, especially by the ever-increasing number of those who own such vehicles. As is well known, in order to meet this demand and accommodate the growing traffic the State of Maryland has built and is maintaining a system of improved roadways. Primarily for the enforcement of good order and the protection of those within its own jurisdiction the state put into effect the above-described general regulations, including requirements for registration and licenses. A further evident purpose was to secure some compensation for the use of facilities provided at great cost from the class for whose needs they are essential and

whose operations over them are peculiarly injurious. In the absence of national legislation covering the subject a state may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles—those moving in interstate commerce as well as others. And to this end it may require the registration of such vehicles and the licensing of their drivers, charging therefor reasonable fees graduated according to the horse-power of the engines—a practical measure of size, speed, and difficulty of control. This is but an exercise of the police power uniformly recognized as belonging to the states and essential to the preservation of the health, safety and comfort of their citizens." *Hendrick* v. *Maryland,* 235 U. S. 610, 622.

"The Oregon motor vehicle law, by its express terms, exacts a fee frequently called by the courts a 'privilege tax' for operating motor vehicles upon the highways of this state. It is not a tax upon property. It is a charge upon privilege. That such a tax is constitutional has been so well established by judicial decision that there can be no doubt as to its validity. The Oregon motor vehicle law does not tax the property of plaintiff one dollar. It does, however, exact compensation for the privilege of operating its cars upon the highways of the state. * * * Under the Oregon motor vehicle law the value of the car has nothing to do with the amount of the registration fee exacted. The charge against an aged Ford, capable of being driven upon the highways, is as great as that upon that popular car fresh from the factory. An old car, of the value of not to exceed four or five hundred dollars, that has deteriorated by years of hard service, is taxed as high as a new car valued at five thousand dollars, if of equal weight. This could not be so if the registration fee were an *ad valorem* tax assessed against property. The fee is for regulation, including compensation, and is not a tax

upon property." *Camas Stage Co.* v. *Kozer,* 104 Ore. 600, 615, 618, 619.

Referring to motor vehicles, the supreme court of Illinois has said: "These ponderous vehicles driven by powerful engines are a menace to the public safety unless managed and driven by persons who are competent and qualified to operate them. Those used for transporting heavy merchandise are practically engine-driven freight cars." *Chicago* v. *Kluever,* 257 Ill. 317, 324, repeated in *Westfalls Storage Co.* v. *Chicago,* 280 Ill. 318, 320.

The power of this Territory, under present laws, to tax is beyond doubt. In the exercise of the power of taxation it may make classifications that, as has been often said, bear some reasonable relation to the objects to be accomplished. It may also in the exercise of the police power regulate and control in practical ways dangerous traffic like that of motor vehicles. If the statute now under consideration expressly imposed the tax upon those motor vehicles only which used the public highways, the validity of the tax probably would be unquestioned. The attack appears to be made in these cases because the law does not on its face discriminate between vehicles which do use the highways and those which do not use them. It is entirely clear upon the allegations in the Mana case that the trucks upon which the tax is sought to be imposed are constantly using the highways in the course of the transaction of the business of their owner. The allegation in the petition in the Kitagawa case that the vehicles "are not used upon the public highway" must be deemed to be qualified by the further allegation, in the same petition, that these second-hand vehicles constitute a part of the stock in trade of the petitioner whose business is to buy and sell automobiles and whose purpose and daily effort is to sell these particular sixteen automobiles at the earliest possible dates. It is matter of common knowledge

that in the effort to sell automobiles, whether used or unused, the machines are necessarily taken and driven upon the highways in order to demonstrate to the prospective purchasers their power and their fitness generally for use. It is apparent from all of the allegations of the petition that while at times these sixteen vehicles are at rest in the garages of the owner, they are at other times taken upon the highways for use thereon and are intended and desired by the present owner and the purchasers from him for use on the highways at frequent intervals. The legislature evidently considered it impractical to provide a scheme of taxation measured mathematically by the extent of the use of the vehicles upon the highways or to say that second-hand automobiles in perfect running order held for sale should bear the tax only when actually sold. That there would have been difficulties in collecting such a tax is obvious. The cost to the Territory of enforcing such a law and of observing and proving the precise occasions when the vehicles are used and when they are not used might well be burdensome. The legislature would be justified in proceeding upon the theory that if an automobile is possessed which is in perfect condition for use it is intended for use on the public highways and will be so used.

In other words, that the tax is not (aside from its regulatory aspects) a tax on property is obvious from the fact that the mere weight of automobiles does not bear any relation to their value. Cars retain their weight in spite of increasing age. A Packard or a Lincoln ten years of age weighs far more than a small Ford fresh from the factory and yet the latter may be of far greater market value. The tax, in addition to being an exercise of the police power, is imposed on the privilege of using these vehicles on the public highways,—vehicles which, as above pointed out, not only require expensive highways but also

endanger persons and property and necessitate added police protection—and does not apply or is not imposed on vehicles which, lacking vital parts, clearly are not intended for use on the highways, and, in truth, are not "automobiles" or "power-driven vehicles." This latter class of vehicles would bear the ordinary property tax of a percentage on their value.

While section 1306 does not (in the case of second-hand cars) in words limit the tax to motor vehicles which actually use the highways, it imposes a tax on all complete, useable second-hand cars on the theory that they will be used on the highways. The instances of ownership of complete, second-hand vehicles, in good running order, on hand and unused for a whole taxable year are extremely rare. Tax laws need not be perfect,—perhaps none have been invented which are perfect. If they come as near as is practicable to being perfect and to securing equality, that is all that can be expected of a legislature composed of human beings. The exemption for three months of *new* cars in stock for sale is another illustration of a necessary imperfection in the law—in this instance in favor of the dealers. Such cars may be used repeatedly on the highways during the three months' period for purposes of demonstration and yet pay no tax during that period. Again, they may remain unsold for six months instead of three and yet are exempt for the first three months only. Legislatures and courts must be practical. A declaration of unconstitutionality cannot be based upon unavoidable imperfections.

In our opinion, it was within the power of the legislature to impose the weight tax under consideration. The decrees appealed from are affirmed.

*C. W. Carlsmith* (*C. S. Carlsmith* with him on the briefs) for complainants.

*C. N. Tavares,* Second Deputy Attorney General, *E. R.*

*McGhee,* Third Deputy Attorney General, and *W. H. Beers,* County Attorney of Hawaii (*H. R. Hewitt,* Attorney General, *E. R. McGhee* and *W. H. Beers* on the brief) for respondents.

CONCURRING OPINION OF PARSONS, J.

I concur in the conclusion reached by the majority, namely, that "it was within the power of the legislature to impose the weight tax under consideration," and in its affirmance of the decrees appealed from. I do not, however, agree "that the tax is not (aside from its regulatory aspects) a tax on property." In my view the motor vehicle tax provided by section 1306, R. L. 1925, and its amendments is a specific tax, provided, with respect to all property within the class therein named, in lieu of the general property taxes set forth under the caption *"ad valorem* taxes" in section 1315, R. L. 1925, and its amendments; that its primary purpose is to provide public revenue, and that it is for the foregoing reasons in part at least a property tax. But even so it is a tax upon property requiring a distinct classification for the reason that the property thereby taxed is properly subject to the important license and police regulatory provisions set forth in the majority opinion, and for the further reason that the registration, transfer, and *use* on the public highways of such property are subject to the more extensive police regulations provided by Act 197, L. 1929.

That the tax itself, not being based upon the *use* of said property, therefore lacks an ingredient necessary to make it, in whole or in part, an excise is claimed by the complainant. A decision upon that point is not necessary to a decision of the case in the view herein presented.

Under a law with regulatory features different from our own the supreme court of Minnesota, in its earlier cases, considered the motor vehicle tax as a property tax.

Later it was definitely announced that the tax was a property tax including an element of privilege tax. This latter holding now embodies the settled doctrine in that state. See *American Railway Express Co. v. Holm,* 173 Minn. 72, 216 N. W. 542, 543. Under an earlier decision in the same state it was held that a statute providing for the taxation of motor vehicles once used on the public streets and highways on a more onerous basis than other personal property is not in contravention of the state constitution; and this notwithstanding the fact that the tax was then held to be not a privilege tax but a tax on property. *State v. Peterson,* 159 Minn. 269, 198 N. W. 1011. Quoting from the last cited report, on page 1012: "In *State v. Royal Mineral Ass'n,* 132 Minn. 232, 156 N. W. 128, Ann. Cas. 1918A, 145, it was said that under the constitution the power of the legislature, in classifying subjects for taxation, is exceedingly broad. This was repeated in *State v. Minn., etc., Co.,* 145 Minn. 231, 176 N. W. 756, the court adding that the classification must be based on differences furnishing a reasonable ground for making a distinction between the several classes. The constitutional requirement is that all taxes shall be uniform on the same class of subjects. In classifying motor vehicles for taxation as it has, the legislature adopted past or prospective use of the public highways as the basis for classification. The burden of taxation is uniformly imposed upon all motor vehicles in the class thus created. No classification is possible which will not result in occasional hardships. The legislature might have provided that an automobile not operated on a public highway for an entire calendar year should be exempt in that year from the tax imposed by the act, but, if the tax in a particular year could not be collected unless the state could show that there had been a user of the highways at some time in the year, it might be difficult to enforce collection of the tax.

This is a practical consideration which may have influenced the legislature in adopting the rule prescribed by section 16. The rule has the merit of certainty—a consideration which might properly guide the exercise of legislative discretion."

Under state constitutions requiring equality and uniformity of taxation statutes providing specific taxes upon motor vehicles in lieu of *ad valorem* taxes have been held valid. See *State ex rel. Fargo* v. *Wetz,* 168 N. W. 835, 5 A. L. R. 731. Quoting from the last cited report, on page 747: "Much of the argument of counsel for the petitioner seems based upon the hypothesis that the constitution precludes taxation of any other character than a property tax levied upon ad valorem assessment. It is doubtless true that, under the constitution as it stood prior to the amendment, no other tax upon property than one levied upon an ad valorem assessment at a uniform valuation was contemplated. But, under § 176 as amended, the only requirement is one of uniformity within a class. In some of the states, Georgia for instance, the constitution provides not only that taxation shall be uniform upon the various classes of subjects within the territorial limits of the authority levying the tax, but in addition contains the express requirement that property taxation shall be ad valorem. * * * Had it been desired to limit the power of the legislature to prescribe property taxes in such a way as to permit no other kind of tax except one levied upon an ad valorem basis, it would seem that such a limitation would have been expressed in § 176. In the absence of such a provision, it cannot be held that the legislature is precluded from laying a property tax upon any basis that will exact contributions according to an equitable standard, and one which is free from the vice of arbitrary classification."

Upon the subject of equality and uniformity of taxa-

tion state constitutions are much more explicit than are the Fifth and Fourteenth Amendments of the Federal Constitution with which the complainants claim our motor vehicle law is in conflict.

As to the Fourteenth Amendment: " * * * nor shall any state deprive any person of * * * property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Assuming the foregoing Amendment to be applicable in the premises: "Taxation need not be equal and uniform unless required to be so by the state constitution, subject to the exceptions that the equal protection of the law clause of the Federal Constitution forbids discrimination between persons or property belonging to the same class, and that occupation and license taxes must be equal and uniform on persons of the same class." 1 Cooley Taxation (4 Ed.) Sec. 247.

As to the Fifth Amendment: "No person shall * * * be deprived of * * * property, without due process of law." Cooley discusses the meaning of "due process of law" with reference to the Fourteenth Amendment. What follows is in part applicable to the Fifth: "It will be observed that the due process of law clause contains no specific limitation upon the power of the states to impose taxes. 'Due process of law' is not defined by the federal or state constitutions, and the courts have deemed it impossible to frame a definition covering all cases. The term is synonymous with 'law of the land.' A strict interpretation of the words 'due process of law,' it has been said, 'would limit their effect to matters of procedure rather than of substantive law,' but while 'the majority of the cases on the subject do undoubtedly refer to matters of procedure, classifying notice and hearing as subjects of procedure,' yet 'these rights as to procedure which attain to the dignity of constitutional rights are so substantial that the distinction between them and real substantive

rights is very shadowy, to say the least.' What would be due process if done under the taxing power is not necessarily due process if done under some other power. In tax cases, especially those carried to the Supreme Court of the United States, it is customary, it seems, to add to other constitutional objections, for good measure, the contention that the tax law violates the due process of law provision. In nearly every case, however, except those cases where notice and hearing are involved, the court has merely rejected the contention without discussion. The result is that hundreds of cases are to be found in the digests holding that a particular tax statute, as to substantive rights, does not violate the due process clause. These decisions are of little or no value. In fact outside of decisions relating to notice and hearing and the like, the particulars in which tax statutes may violate the due process clause are very limited. * * * At any event, in order to bring taxation imposed by a state, or under its authority, within the scope of the provision of the Fourteenth Amendment which prohibits the deprivation of property without due process of law, the case should be so clearly and palpably an illegal encroachment upon private rights as to leave no doubt that such taxation by its necessary operation is really a spoliation under the power to tax. A state tax law will be held to conflict with the due process clause in the Federal Constitution 'only where it proposes, or clearly results in, such flagrant and palpable inequality between the burden imposed and the benefit received, as to amount to the arbitrary taking of property without compensation —to spoliation under the guise of exerting the power of taxing.'" 1 Cooley Taxation, Sec. 143, pp. 330-337.

Within the definitions above set forth section 1306, R. L. 1925, is not discriminatory between persons or property of the same class, nor does it propose or clearly result in "such flagrant and palpable inequality between the

740

burden imposed and the benefit received, as to amount to the arbitrary taking of property without compensation." See *Dane* v. *Jackson*, 256 U. S. 589, 65 L. Ed. 1107, 41 Sup. Ct. 566.

For the reasons above set forth I concur with the majority in the opinion that said section does not violate the Fifth or the Fourteenth Amendments of the Constitution of the United States.