# IN THE MATTER OF THE APPEAL OF LEO L. YERIAN FROM HAWAII UNEMPLOYMENT RELIEF AND WELFARE TAX ASSESSMENT.

## No. 2472.

ARGUED JANUARY 21, 1941.     DECIDED APRIL 23, 1941.

COKE, C. J., PETERS AND KEMP, JJ.

This is an appeal from a decision of the tax appeal court taken pursuant to the provisions of R. L. H. 1935, § 1950, as amended by Haw. Laws 1939, Act 208, Ser. A-33, § 12. It involves the constitutionality of an assessment levied by the tax commissioner, pursuant to the provisions of the "Hawaii Unemployment Relief and Welfare Act,"[1] hereinafter referred to as the "Hawaii Welfare Act," upon the compensation received by Leo L. Yerian, Esquire, for the month of December, 1939, for services performed by him entirely within the Territory as the district manager of the Home Owners' Loan Corporation, an instrumentality of the United States, created and existing pursuant to the Act of Congress of June 13, 1933 (48 Stat. L., pt. 1, c. 64, p. 128, as amended, 12 USCA §§ 1463 *et seq.*). The taxpayer took a direct appeal from the assessment of the commissioner to the tax appeal court. The tax appeal court in a well-considered opinion sustained the assessment. From the decision of the tax appeal court came the present appeal to this court.

Appellant assigns as error in this court the following grounds: "1. That the Hawaii Unemployment Relief and Welfare Act is in contravention of the provisions of the Social Security Act of the United States and particularly of Subdivision 5, Section 1607 of the Internal Revenue Code of the United States. 2. That under the said Unemployment Relief and Welfare Act, the appellant is deprived of property without due process of law in violation of the 5th and 14th amendments to the Constitution of the United States. 3. That the said tax law is dis-

---

[1] Haw. Laws 1933, Act 209, as amended by Haw. Laws 1935, Act 135, Ser. E-214, as amended by Haw. Laws 1937, Act 242, Ser. D-164, as amended by Haw. Laws 1939, Act 213, Ser. A-34, § 15, Act 238, Ser. D-182, Act 241, Ser. A-44, § 4, and Act 252, Ser. A-42, §§ 3, 4, 5 and 6.

criminatory in that it subjects appellant, as a federal employee, to the penalty of fine and imprisonment, to which employees of private persons are not subjected. 4. That the said tax law is discriminatory in that it exempts federal employees of the Army, Navy and Marine Corps, but does not exempt employees of other federal departments. 5. That the said tax law attempts to subject appellant to the burden of the tax but denies him its benefits. 6. That the government of the United States has not permitted the imposition of such a tax. 7. That the said Act is in conflict with the constitution and laws of the United States."

We assume that the particular section of the Internal Revenue Code, which appellant claims under ground one of his specifications of error that the Hawaii Welfare Act contravenes, is subdivision (6) of subsection (c) of section 1607,[2] as amended, wherein is excepted from the

---

[2] Section 1606 of the Internal Revenue Code is section 906, title IX, of the Social Security Act of August 14, 1935 (49 Stat. L., pt. 1, c. 531, p. 642), and refers to employees engaged in interstate commerce. Section 1607 of the Internal Revenue Code of the United States is section 907, title IX, of the Social Security Act, as amended by the Act of June 25, 1938, § 13A (52 Stat. L., c. 680, pp. 1040, 1110, 42 USCA § 1107). Section 907 of the Social Security Act was incorporated into the Internal Revenue Code of February 10, 1939 (53 Stat. L., pt. 1, c. 2, p. 1), as section 1607 but the latter section was again amended by the Act of August 10, 1939 (53 Stat. L., pt. 2, c. 666, § 614, pp. 1360, 1393), wherein subdivision 5 of section 1607 of the Internal Revenue Code, as amended, appears as subdivision (6) of subsection (c) of section 1607 of the Internal Revenue Code, as amended. The Internal Revenue Code of the United States of January 2, 1939, was "intended to contain all the United States statutes of a general and permanent nature relating exclusively to internal revenue, in force on January 2, 1939," and that, subject to the repeal and savings provisions of section 4 of the Act of February 10, 1939 (53 Stat. L., pt. 1, c. 2, p. 1), by which the Internal Revenue Code was enacted into law, sections 1600 to 1609, inclusive, of subchapter (c) of chapter 9 of the Internal Revenue Code, with certain exceptions with which we are

definition of the term "employment" in respect to the tax imposed on employers of eight or more under section 1600 of the Code "service performed in the employ of the United States Government or of an instrumentality of the United States which is (A) wholly owned by the United States, or (B) exempt from the tax imposed by section 1600 by virtue of any other provision of law."

The parties stipulated before the tax appeal court that the following facts were deemed to be established: "1. That appellant, Leo L. Yerian, is the District Manager of the Home Owners' Loan Corporation in the Territory of Hawaii; 2. That appellant entered the employ of said corporation in the state of California, wherein he is domiciled and that he is not domiciled in this Territory; 3. That appellant arrived in the Territory of Hawaii during the month of November 1939 by reason of a transfer issued to him by the said Home Owners' Loan Corporation, which directed him to serve as said District Manager in the Territory of Hawaii; 4. That appellant has served as such District Manager in the Territory of Hawaii continuously since his arrival in the Territory in November 1939, and is still serving as such; 5. That appellant's residence in the Territory of Hawaii is for an indefinite period during which time his employment is and will be entirely within the Territory of Hawaii, and will continue at least until and unless he should be transferred to another station; 6. That appellant is subject to transfer to whatever station the said Home Owners' Loan Corporation may direct, if he wishes to remain in the employ of the Home Owners' Loan Corporation; 7. That the compensation involved in this appeal was received for services

not concerned, are but the codification "without substantive change and with only such change of form as is required by arrangement and consolidation" of the provisions of title IX of the Social Security Act, as amended, and in force on January 2, 1939.

as such employee of the Home Owners' Loan Corporation, performed entirely within the Territory; 8. That as such District Manager, appellant is in receipt of monthly compensation from said corporation in the sum of $300.00; 9. That such salary is paid to him by check directly from the head office of the Home Owners' Loan Corporation, which is in Washington, D. C.; 10. That upon the 8th day of January, 1940, appellant filed a return under the Hawaii Unemployment Relief and Welfare Act, as amended, for the month of December 1939, showing receipt during said month of $300.00 as compensation from the said corporation for services rendered as such District Manager; that upon the said return a tax was assessed by the Territory of Hawaii under the Unemployment Relief and Welfare Act, as amended, in the sum of $1.80; that he paid the said tax as assessed, under protest, and appealed from the said assessment to this Court; 11. That the Tax Commissioner has adopted, after due public hearing, and the Governor has approved, rules relating to the return and payment of the tax imposed by the Unemployment Relief and Welfare Act, as amended, a copy of said rules being hereto annexed and made a part hereof the same as if set forth herein at length; that said rules were duly published. * * * That this stipulation is entered into without prejudice to the right of each party to raise objections on account of incompetency, irrelevancy, immateriality, or any other ground whatsoever, and without prejudice to the right of each party to introduce evidence in his or its behalf." The attorney general objected before the tax appeal court to the competency, relevancy and materiality of the statements contained in paragraphs 2, 3 and 6 of the agreed statement of facts.

The Hawaii Welfare Act, at the time of the assessment involved in this case, imposed, in addition to a tax on dividends, a monthly tax of six-tenths of one per cent

upon the amount of all compensation not otherwise exempted received by any person during all or any part of such month. Section 3 of the Act, as amended, is quoted in the margin.[3]

All employers making payments to employees of compensation were required by section 4 of the Act to deduct and withhold therefrom the amount of the tax and pay the amount so withheld for each month within twenty days after the close of such month to the collector of the taxation division in which the employer had his principal place of business or to the commissioner at Honolulu if the employer had no place of business in the Territory.

The Act carries its own definition of the term "com-

---

[3] "(a) There shall be assessed, levied, collected and paid for each month, a tax of six-tenths of one per centum upon the amount of all compensation, not exempted under subsection (b) hereof, received by every person during all or any part of such month. Provided that before the 15th day of June of each year the tax commissioner shall prepare an estimate of the probable receipts from said tax for the taxable year from the 1st day of July next following to the succeeding June 30th, and if the estimated probable receipts during such taxable year shall be in excess of $900,000.00, the tax commissioner shall, on or before said July 1st, with the written approval of the governor, decrease the rate of six-tenths of one per centum to the lowest lesser rate in even tenths of one per centum which it is estimated will produce the required amount of $900,000.00 and such reduced rate shall constitute the rate for such succeeding taxable year.

"(b) Any such compensation paid (1) out of funds appropriated by, or furnished pursuant to the provisions of, any statute of the Territory or of the United States for the relief of unemployment or (2) to employees of the Territory employed in the County of Kalawao, shall be exempt from the tax imposed by this chapter.

"(c) Compensation received from the United States by officers and enlisted personnel for service in the regular army, navy, or marine corps, including the respective reserve corps of the United States, shall likewise be exempt." Haw. Laws 1933, Act 209, § 3, R. L. H. 1935, appendix, c. IV, § 3, am. Haw. Laws 1939, Act 238, Ser. D-182, § 6, am. Haw. Laws 1939, Act 241, Ser. A-44, § 3.

pensation," as used in the Act, as amended.[4]   The term "employer," as defined in section 1 (a) of the Act, as amended, was further amended by Haw. Laws 1939, Act 241, Ser. A-44, § 2, to include "the United States and instrumentalities of the United States."   By section 5 of the Act all employers were required on and before the 20th day of each month to make a full, true and correct return showing all compensation covered by section 4 paid by them during the preceding month and showing the tax due and withheld thereon.   No returns of compensation received by individual employees were required of them except in the cases of those in receipt of compensation from employers who did not have a place of business in the Territory and did not have an agent within the Territory responsible for making the returns, withholdings and payments of taxes on compensation required by the Act and those in receipt of compensation from the United States or an instrumentality thereof who were required to file a return for each month and pay the tax due under the Act to the collector of the division in which he resided or was at the time present or might be required so to do by rules of the commissioner or, if he were not at the time within the Territory, with and to the commissioner at Honolulu.   Section 8 of the Act, as amended, is quoted

---

[4] " 'Compensation' shall mean and include commissions, fees, wages, salaries, bonuses and every and all other kinds of compensation paid for or attributable to personal services performed within the Territory received by an individual, which services have been performed by such person as an employee under the direction and control of the employer, and shall also include, without limitation of the foregoing definition, all fees, commissions, bonuses, and all other kinds of compensation, paid to trustees or directors of trusts, unincorporated associations or corporations or to executors, administrators, receivers, masters, commissioners, and the like, for their services as such, where such compensation is not included in the measure of a tax payable by such person under the general excise tax law."   Haw. Laws 1933, Act 209, § 1 (d), am. Haw. Laws 1939, Act 252, Ser. A-42, § 3 (1).

in the margin.[5] The rule in respect to returns by individual employees referred to in paragraph eleven of the agreed statement of facts is dated July 3, 1939, and became effective August 20, following. The material portions thereof are quoted in the margin.[6] In addition

[5] "Section 8. Individual to file return of earned income when. Any individual who is in receipt of compensation from an employer who does not have a place of business in the Territory and does not have an agent within the Territory responsible for making the returns, withholdings and payment of taxes on compensation, required by this Act, and every individual who is in receipt of any dividends from any foreign company, shall file a return for each month with, and pay the tax due under this Act to, the collector of the division in which he resides or is at the time present, as may be required by rules of the commissioner, or, if he is not at the time within the Territory, then with and to the commissioner at Honolulu. Any individual who is in receipt of compensation from the United States or an instrumentality thereof shall be under the same duty as an individual who is in receipt of compensation from an employer who does not have a place of business in the Territory, unless the tax has been withheld from such compensation as provided by section 4. All such returns shall be filed, and the payments thereon shall be made, at the times and in the manner prescribed in Section 4 of this Act, and each such return shall state the name of the individual filing the same, the name, residence and address of his employer, or of the foreign company paying such dividends, the total of all such compensation or dividends received for the preceding month and the tax due thereon, and shall include such other and further information and be upon such form as the commissioner shall require or prescribe. Failure to comply with the provisions of this section shall constitute a misdemeanor. The tax commissioner, upon request of a taxpayer required by this section to make returns, may permit quarterly returns and payments of tax with respect to compensation, and annual returns and payments of tax with respect to dividends, and in granting such permission shall fix the date or dates for such filing of returns and payment of taxes." Haw. Laws 1933, Act 209, § 8, am. Haw. Laws 1939, Act 241, Ser. A-44, § 4.

[6] "Every person * * * in receipt of any payments of compensation * * * upon which the tax is imposed from any person who by law is not required to withhold the tax from said payment, or who cannot be required to withhold said tax by territorial law, shall be under the same duty with respect to making returns and paying the tax as the individuals mentioned in Section 8 of said Act 209, S. L. 1933, as

to making returns the individual employees so excepted were required to pay the tax pursuant to the return at the times and in the manner prescribed by section 4 of the Act in respect to employers.[7] It was provided by the same section, as amended, that failure to comply with its provisions constituted a misdemeanor, the penalty upon the conviction of which was fixed by section 15. It was also provided by the latter section that if any individual liable under the provisions of the Act to make and file a return of compensation received by him should fail, neglect and refuse to make and file the same within the time prescribed by the Act, the commissioner might make a return for such individual from the best information obtainable and might levy and assess the tax upon such compensation shown by such return against such individual and, in addition to said tax and as a part thereof when finally assessed, a penalty not to exceed twenty-five per cent of the amount of said tax might, in the discretion of the commissioner, be added to and become a part of the tax.

The objects of the Hawaii Welfare Act are enumerated in Haw. Laws 1937, Act 242, Ser. D-164, §§ 24 to 27, both inclusive, as amended by Haw. Laws 1939, Act 238, Ser. D-182, § 2, R. L. H. 1935, c. 259 AI, pt. II, §§ 21 to 27, both inclusive. They include assistance to the aged, dependent children, child welfare services and to the blind. Assistance to the aged and blind is limited to those persons

amended. The amount of tax accruing in any month shall be returned and the tax thereon paid on or before the 20th day of the following month unless the taxpayer makes a request to the Tax Commissioner as provided by the second paragraph of Section 8 of said Act 209, S. L. 1933, as amended, which is hereby made applicable to all such taxpayers."

[7] See Haw. Laws 1933, Act 209, § 8, as amended by Haw. Laws 1939, Act 241, § 4, quoted in note 5.

who are in need and have not sufficient income or other resources to provide a subsistence compatible with decency and health and who have resided within the Territory for not less than five years during the nine years immediately preceding the date of application for old-age assistance.[8] The disposition and expenditure of the tax imposed under the Hawaii Welfare Act, including grants-in-aid received from the United States, pursuant to the provisions of the federal Social Security Act are controlled by the provisions of Haw. Laws 1939, Act 238, Ser. D-182, §§ 7, 8, which are quoted in the margin.[9]  The condition contained

[8] See Haw. Laws 1937, Act 242, Ser. D-164, §§ 25, 26, as amended by Haw. Laws 1939, Act 238, Ser. D-182, § 1, R. L. H. 1935, c. 259 AI, pt. II, §§ 22, 23.

[9] "Section 7.  All moneys collected during any calendar year after July 1, 1937, under the provisions of said Act 209, as amended, shall be paid as collected into a special fund to be known as the 'Assistance Fund' and expended as hereinafter provided:

"Such portion of said assistance fund as may be necessary to be expended in order to secure the maximum payments or grants-in-aid from the federal government for dependent children, old age assistance, and aid to the blind shall be first expendable and thereafter any portion remaining shall be expendable for other public and general assistance (as defined in Act 242, Session Laws of Hawaii 1937, as the same may be amended), and for assistance to persons assigned to work on public projects pursuant to said Act, but not in excess of $900,000.00 per calendar year inclusive of administration costs of all activities provided for by said Act, which administration costs shall not exceed twelve and one-half per centum (12½%) of the total funds expended for relief from all sources, without the necessity of securing the approval of the governor; any surplus in said assistance fund as may be determined by the governor to exist from time to time, over and above such portion, shall be allocated by the governor for expenditure for the following purposes:  (1) for general assistance under said Act, for public assistance to dependent children, aged persons and the blind in excess of the amounts for which payments or grants-in-aid may be received from the federal government, and for relief of persons not covered by the classifications or definitions of the Social Security Act; (2) for aid to crippled children, in such manner as to comply with the Social Security Act, amounts not in excess of $25,000.00

in the last paragraph of section 7 obviously has occurred; section 2 of the Act became effective and expenditures are made by the director of social security.

1. Under his first assignment of error appellant contends, as we understand his argument, that under the federal Social Security Act the source of grants-in-aid to the Territory for the assistance of the indigent aged, of dependent children, child welfare services and of the blind is the taxes imposed by the Act itself with respect to employment and to employers of eight or more; that from both taxes imposed employees of the United States government and of instrumentalities thereof are expressly exempted; that under the local unemployment compensation law employees of the United States and of instrumentalities thereof are similarly expressly exempted from the unemployment compensation tax thereby imposed; and that by reason of the express exemptions granted both by the national Social Security Act and local unemployment compensation law, employees of the United States government and of instrumentalities thereof are impliedly exempted from the tax imposed under the Hawaii Welfare Act.

The Social Security Act[10] legislatively is, in reality,

annually; and (3) for unemployment relief measures in cooperation with any federal agency for the relief of unemployment.

"Unless and until Section 2 of this Act becomes effective, expenditures under this section shall be made by the board of public welfare, created by said Act 242 of the Session Laws of Hawaii 1937. When and if Section 2 of this Act becomes effective, expenditures under this section shall be made by the director of social security.

"Section 8. All grants-in-aid, reimbursements, assistance or refunds received from the federal government for the purposes of this Act are hereby reappropriated into the assistance fund provided in section 7 of this Act and shall be expended by the director without the necessity of approval of allocation by the governor for the purposes of this Act, and in conformity with the requirements of the Social Security Act."

[10] Act of August 14, 1935, 49 Stat. L., pt. 1, c. 531, p. 620, as amended by Act of June 25, 1938, 52 Stat. L., c. 681, p. 1139, as

the consolidation of a series of Acts arranged under eleven titles captioned as follows: title I, grants to States for old-age assistance; title II, federal old-age benefits;[11] title III, grants to States for unemployment compensation administration; title IV, grants to States for aid to dependent children; title V, grants to States for maternal and child welfare; title VI, public health work; title VII, social security board; title VIII, taxes with respect to employment; title IX, tax on employers of eight or more; title X, grants to States for aid to the blind; title XI, general provisions. These titles fall naturally into three groups, *viz.*, group 1 consisting of titles VII and XI, the provisions of which may be denominated as administrative; group 2 consisting of titles I, III, IV, V, VI and X, grants-in-aid; and group 3 consisting of titles II, III, VIII and IX, social insurance. Title III, judged by its purposes, is logically entitled to inclusion in both groups 2 and 3.

We are alone concerned with the grants-in-aid included in group 2 which affect indigent aged (title I), dependent children (title IV), child welfare services (title V, part 3), and indigent blind (title X) and the tax provisions included in group 3 in respect to taxes on employment (title VIII) and tax on employers of eight or more (title IX).

The grant-in-aid of administration of state unemployment compensation schemes under title III is supplementary to the unemployment tax imposed under title IX. The other grants-in-aid authorize federal grants to the States to assist them in financing designated state

---

amended by I. R. C. dated February 10, 1939, 53 Stat. L., pt. 1, c. 2, p. 1, as amended by Act of August 10, 1939, 53 Stat. L., pt. 2, c. 666, § 614, pp. 1360, 1393.

[11] By the amendment of August 10, 1939, 53 Stat. L., pt. 2, c. 666, p. 1362, effective January 1, 1940, changed to "Federal Old-Age and Survivors Insurance Benefits."

activities, including general and special health service, child welfare activities and the assistance to the indigent aged, dependent children and indigent blind. In all but two cases, *viz.*, child welfare agencies in rural areas and general public health services, state participation is mandatory. Titles I, IV, V, part 3, and X relate to the same subjects of relief as the local welfare Act. The grants-in-aid for the purposes of enabling the States to furnish financial assistance to the indigent aged,[12] dependent children,[13] child welfare services[14] and to the blind,[15] included in the Social Security Act, are not appropriations but are authorizations for future appropriations. In each instance, except child welfare services, the prerequisites to the receipt by the States of grants-in-aid are the submission by the State soliciting the grant, of a state plan of aid, containing the terms and conditions prescribed by the Act, in respect to the subject of assistance for which application for such aid has been made,[16] and its approval by the social security board established by the Act. To the receipt by the States of grants-in-aid for child welfare services under title V, part 3, of the Act, a state plan is not a prerequisite. Of the grant-in-aid to each State a certain amount is allotted by the Secretary of Labor for use by cooperating state public welfare agencies on the basis of plans developed jointly by the state agency and the Children's Bureau and the remainder on the basis of such plans not to exceed such part of the remainder as the rural population of such States bears to the total

---

[12] Social Security Act, tit. I, § 1, as amended, 42 USCA § 301.

[13] *Id.* tit. IV, § 401, as amended, *id.* § 601.

[14] *Id.* tit. V, pt. 3, as amended, *id.* § 721.

[15] *Id.* tit. X, § 1001, as amended, *id.* § 1201.

[16] *Id.* tit. I, § 2, indigent aged, as amended, *id.* § 302; tit. IV, § 402, dependent children, as amended, *id.* § 602; tit. X, § 1002, blind, as amended, *id.* § 1202.

rural population of the United States. The prerequisite in respect to a state plan for indigent aged is typical of all in which state plans are required and is quoted in the margin.[17] Under the Act the term "State" includes territories.

---

[17] "(a)  A State plan for old-age assistance must (1) provide that it shall be in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them; (2) provide for financial participation by the State; (3) either provide for the establishment or designation of a single State agency to administer the plan, or provide for the establishment or designation of a single State agency to supervise the administration of the plan; (4) provide for granting to any individual, whose claim for old-age assistance is denied, an opportunity for a fair hearing before such State agency; (5) provide such methods of administration (including after January 1, 1940, methods relating to the establishment and maintenance of personnel standards on a merit basis, except that the Board shall exercise no authority with respect to the selection, tenure of office, and compensation of any individual employed in accordance with such methods) as are found by the Board to be necessary for the proper and efficient operation of the plan; (6) provide that the State agency will make such reports, in such form and containing such information, as the Board may from time to time require, and comply with such provisions as the Board may from time to time find necessary to assure the correctness and verification of such reports; (7) effective July 1, 1941, provide that the State agency shall, in determining need, take into consideration any other income and resources of an individual claiming old-age assistance; and (8) effective July 1, 1941, provide safeguards which restrict the use or disclosure of information concerning applicants and recipients to purposes directly connected with the administration of old-age assistance.

"(b)  The Board shall approve any plan which fulfills the conditions specified in subsection (a), except that it shall not approve any plan which imposes, as a condition of eligibility for old-age assistance under the plan—

"(1)  An age requirement of more than sixty-five years, except that the plan may impose, effective until January 1, 1940, an age requirement of as much as seventy years; or

"(2)  Any residence requirement which excludes any resident of the State who has resided therein five years during the nine years immediately preceding the application for old-age assistance and has

The Hawaii Welfare Act, as finally amended, unquestionably was designed, in addition to making provisions for general relief and for child welfare services, to establish and adopt a territorial plan to aid the indigent aged, dependent children and the indigent blind, which would satisfy the respective criteria upon the same subjects of relief required by the federal Social Security Act and thereby qualify the Territory for the receipt by it, from the national government, of the grants-in-aid provided by the federal Social Security Act in respect to the subjects of relief common to both. The use of the word "unemployment" in connection with the Hawaii Welfare Act, as amended, is a misnomer. While unemployment relief was formerly one of its purposes, it now has nothing to do with unemployment. That subject of social security is controlled by the Hawaii Unemployment Compensation Act.[18] The local welfare Act has been submitted to and approved by the federal social security board.

Under title VIII of the federal Social Security Act a tax is imposed of a per centum (one per cent in 1939) upon the wages of a selected class of workers and a tax of an equal amount upon the employer for corresponding pay rolls.[19] The employer must pay both taxes and is authorized to collect the tax due from his workers by deducting the amount of the same as and when wages are paid. No state plan for the imposition of similar taxes is required nor is any credit extended for the payment of

resided therein continuously for one year immediately preceding the application; or

"(3) Any citizenship requirement which excludes any citizen of the United States." Social Security Act, tit. I, § 2, as amended, 42 USCA § 302.

[18] Haw. Laws 1937, Act 243, Ser. D-167, am. Haw. Laws 1939, Acts 213, Ser. A-34, 219, Ser. D-185.

[19] Social Security Act, tit. VIII, §§ 801, 804, 42 USCA §§ 1001, 1004, I. R. C. §§ 1400, 1410.

similar taxes to the State. These taxes when collected are payable into the United States Treasury as internal revenue collections. The provisions of title VIII are not applicable to federal agencies or instrumentalities nor, under the definition of the term "employment," as defined in the Act, to employees of the United States government or its instrumentalities.[20] So much of the definition of the term "employment," as contained in title VIII of the Act as is material to our purposes, is quoted in the margin.[21]

Under title IX of the federal Social Security Act a pay roll tax of a per centum upon wages of a selected class of workers is imposed upon employers of eight or more.[22] Against this tax up to ninety per cent of its total may be credited what is paid by employers to support approved unemployment compensation plans adopted by the States.[23] In addition to this credit the grant-in-aid, under title III of the federal Social Security Act, to cover state administration costs, is available to States having an approved plan of unemployment compensation.[24] The essentials of a suitable state plan of unemployment compensation are prescribed by the federal Social Security Act and are quoted in the margin.[25] Otherwise the pro-

[20] Social Security Act, tit. VIII, § 811 (b), as amended, 42 USCA § 1011, I. R. C. § 1426.

[21] "The term 'employment' means any service * * * of whatever nature, performed * * * within the United States by an employee [for his employer] * * * except— * * * (6) Service performed in the employ of the United States Government or of an instrumentality of the United States which is (A) wholly owned by the United States, or (B) exempt from the tax imposed by section 1600 by virtue of any other provision of law." 53 Stat. L., pt. 2, § 614 (c), p. 1393.

[22] Social Security Act, tit. IX, § 901, 42 USCA § 1101, I. R. C. § 1600.

[23] Social Security Act, tit. IX, § 902, 42 USCA § 1102, I. R. C. § 1601.

[24] Social Security Act, tit. III, § 303, as amended, 42 USCA § 503.

[25] "(a) The Social Security Board shall approve any State law submitted to it, within thirty days of such submission, which it finds

visions of the state plan are left to the discretion of the States. The provisions of title IX of the federal Social Security Act, similarly to those of title VIII, do not

provides that—

"(1) All compensation is to be paid through public employment offices in the State or such other agencies as the Board may approve;

"(2) No compensation shall be payable with respect to any day of unemployment occurring within two years after the first day of the first period with respect to which contributions are required;

"(3) All money received in the unemployment fund shall immediately upon such receipt be paid over to the Secretary of the Treasury to the credit of the Unemployment Trust Fund established by section 1104 of this chapter;

"(4) All money withdrawn from the Unemployment Trust Fund by the State agency shall be used solely in the payment of compensation, exclusive of expenses of administration;

"(5) Compensation shall not be denied in such State to any otherwise eligible individual for refusing to accept new work under any of the following conditions: (A) If the position offered is vacant due directly to a strike, lockout, or other labor dispute; (B) if the wages, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality; (C) if as a condition of being employed the individual would be required to join a company union or to resign from or refrain from joining any bona fide labor organization;

"(6) All the rights, privileges, or immunities conferred by such law or by acts done pursuant thereto shall exist subject to the power of the legislature to amend or repeal such law at any time.

"The Board shall, upon approving such law, notify the Governor of the State of its approval.

"(b) On December 31 in each taxable year the Board shall certify to the Secretary of the Treasury each State whose law it has previously approved, except that it shall not certify any State which, after reasonable notice and opportunity for hearing to the State agency, the Board finds has changed its law so that it no longer contains the provisions specified in subsection (a) or has with respect to such taxable year failed to comply substantially with any such provision.

"(c) If, at any time during the taxable year, the Board has reason to believe that a State whose law it has previously approved, may not be certified under subsection (b), it shall promptly so notify the Governor of such State. (Aug. 14, 1935, c. 531, Title IX, § 903, 49 Stat. 640.)" 42 USCA § 1103, I. R. C. § 1603.

apply to federal agencies or instrumentalities or to persons employed by the federal government or of instrumentalities of the United States. From the term "employment" are excepted services performed in the employ of the United States or any instrumentality of the United States, the same phraseology being employed in the definition of the term "employment" in title VIII.[26] Taxes collected under title IX of the Act are deposited in the United States Treasury as internal revenue collections.[27]

The Hawaii unemployment compensation law was unquestionably equally designed to comply with the provisions of the federal Social Security Act in respect to the tax upon employers of eight or more and thereby to entitle the Territory to the grant-in-aid of administration expenses under title III of the federal Social Security Act and to qualify residents of the Territory, subject to both the federal and local unemployment compensation taxes, to the credit extended under the provisions of the former Act. The local unemployment compensation law similarly excepts agencies and instrumentalities of the United States and employees of the federal government and its instrumentalities from the provisions of the Act.[28] The Hawaii unemployment compensation law, as amended, has been duly and regularly approved by the federal social security board and certified by it as such to the Secretary of the Treasury.

Under the Hawaii Unemployment Compensation Act all taxes collected by the Territory, together with all fines, penalties, interest, etc., are ultimately deposited with the Secretary of the Treasury to the credit of the account of

---

[26] Social Security Act, tit. IX, § 907 (c) (6), as amended, 42 USCA § 1107, as amended, I. R. C. § 1607.

[27] Social Security Act, tit. IX, § 905 (a), as amended, 42 USCA § 1105 (a).

[28] Haw. Laws 1937, Act 243, Ser. D-167, § 5 (e), as amended.

the Territory in the "unemployment trust fund" established and maintained pursuant to the provisions of section 904 of the federal Social Security Act.[29]

The term "exemption," as applied to taxation, presupposes a liability and is properly applied only to a grant of immunity to persons or property which otherwise would have been liable to assessment.[30] The liability of employees of the United States government and its instrumentalities to an income tax such as imposed by the Hawaii Welfare Act is not open to question. Whatever conflict upon the question of immunity existed in the past was forever set at rest by the United States Supreme Court in the case of *Graves* v. *N. Y. ex rel. O'Keefe*, 306 U. S. 466. In that case the earlier case of *The Collector* v. *Day*, 11 Wall. 113 (U. S.), upon which case the rule of immunity was predicated, was expressly overruled. The *Graves* case was followed by the case of *State Tax Comm'n* v. *Van Cott*, 306 U. S. 511.

Pending a final juridical determination of the question of immunity of federal employees from state taxes, the Congress of the United States had initiated legislation having for its object the consent of the federal government to the taxing by the States of compensation received by officers and employees of the United States, or any agent or any instrumentality thereof. This movement culminated in the Public Salary Tax Act, approved April 12, 1939 (53 Stat. L., pt. 2, c. 59, § 4, p. 574), the text of the material part of which is quoted in the margin.[31] The

[29] Haw. Laws 1937, Act 243, Ser. D-167, § 45 (b).

[30] *Foster* v. *City of Duluth*, 120 Minn. 484, 140 N. W. 129; *Providence* v. *Hall*, 49 R. I. 230, 236, 142 Atl. 156.

[31] "Sec. 4. The United States hereby consents to the taxation of compensation, received after December 31, 1938, for personal service as an officer or employee of the United States, any Territory or possession or political subdivision thereof, the District of Columbia, or any agency or instrumentality of any one or more of the foregoing,

policy of Congress in respect to taxes upon compensation of employees of the United States is a subject of comment in *O'Malley* v. *Woodrough*, 307 U. S. 277. The authority of Congress to consent to such tax is unquestioned.[32] An interesting article upon the legal effect of the Public Salary Tax Act of 1939 is to be found in 27 Cal. L. Rev. 705. Holding, as we do, that employees of the United States government and its instrumentalities are not immune generally to taxes, such as imposed by the Hawaii Welfare Act, we may proceed to a consideration of the claim of appellant that, under the provisions of the Social Security Act and the Hawaii Unemployment Compensation Act, he was impliedly exempted from taxes imposed by the Hawaii Welfare Act.

A grant of exemption from taxation is never presumed. The presumption is the other way. Nor may exemptions be created from inferences drawn from doubtful language or mere silence.[33] As said by Mr. Justice Peckham in *Phoenix Insurance Co.* v. *Tennessee*, 161 U. S. 174, 178: "The inference is sought to be drawn in favor of exemption, if the legislature did not affirmatively grant the right to tax. We cannot assent to any such view, and we could come to no such conclusion from an examination of the general statutes cited by counsel. It is a complete overturning of the universal rule in regard to taxation. The power and the right to tax are always presumed, and the exemption is to be clearly granted. Mere silence is the

by any duly constituted taxing authority having jurisdiction to tax such compensation, if such taxation does not discriminate against such officer or employee because of the source of such compensation."

[32] *Graves* v. *N. Y. ex rel. O'Keefe*, 306 U. S. 466; *Van Allen* v. *The Assessors*, 3 Wall. 573, 585 (U. S.).

[33] *Bank of Commerce* v. *Tennessee*, 163 U. S. 416, 423; *Hoge* v. *Railroad Co.*, 9 Otto 348, 355 (U. S.); *Covington &c. Turnpike Co.* v. *Sandford*, 164 U. S. 578, 586; *J. W. Perry Co.* v. *Norfolk*, 220 U. S. 472, 480; *Seton Hall College* v. *South Orange*, 242 U. S. 100, 106.

same as a denial of exemption." The universal rule affirmed by Mr. Justice Harlan in his opinion in the case of *Chicago, &c., Railroad* v. *Guffey*, 120 U. S. 569, 575, as the settled doctrine of that court, is "that an immunity from taxation by the state will not be recognized unless granted in terms too plain to be mistaken."

The inferences sought to be drawn by appellant in favor of exemptions are in conflict and irreconcilable with the terms and provisions of the federal Social Security Act. The several titles of the Act are separable and independent of each other. The taxes collected under titles VIII and IX of the Act are deposited in the Treasury of the United States as internal revenue collections. Although the objects of the taxes thus imposed obviously were to secure the additional revenue necessary for the execution in whole or in part of social insurance and grants-in-aid provided by the Act, they are as separate and distinct from each other as if the subject of separate Acts of the Congress upon the same subjects. The grants-in-aid are not present appropriations but merely authorizations for future appropriations from general revenues disconnected from tax realizations under the Act. In the only instance in which an inference could possibly arise, *i.e.*, in respect to any tax laid under a state plan of unemployment compensation, the plan of unemployment compensation adopted by the Territory contains such exemption.

Moreover the tax imposed by title IX of the federal Social Security Act is an excise tax upon employers, while the tax with which we are concerned under the Hawaii Welfare Act is a tax upon income of employees to the extent of compensation received. The express exception of federal employees from the operation of title IX of the Social Security Act in respect to an excise tax upon employers could have no reasonable relation to a local

income tax upon employees to the extent of their compensation. And unless the federal Social Security Act supersedes all local legislation upon the subject of taxation for relief upon the same subjects covered by the federal Act, which it does not, all implications are neutralized by the express provision of the Hawaii Welfare Act including federal employees in the individuals subject to the tax.

Finally, the conditions imposed by the federal Social Security Act as prerequisites to the acceptance by the States of aid to indigent aged, dependent children and to the blind do not include any condition in respect to the source of the revenue necessary for state participation. Acceptance of the benefits of the grants-in-aid of the subjects named was optional with the States.[34] Sections 2, 401 and 1001 prescribing the respective criteria for state plans for aid to the indigent aged, to dependent children and to the indigent blind are entirely silent upon the subject. The method to be adopted by the States to secure the necessary revenues for participation in relief was left to the discretion of the States.[35] An implication of exemption cannot be predicated upon mere silence.

Appellant further urges, as a basis of implication of exemption, the deposit by the Territory of all taxes collected under the local unemployment compensation law, together with interest, penalties, etc., in the "unemployment compensation fund" in the Treasury of the United States. We fail to see the connection. Benefits payable under the local unemployment compensation Act have their source in the "unemployment trust fund." Moneys thus deposited by the Territory in the unemployment trust fund "are not public moneys in the sense that they are subject to appropriation other than as provided in the

---

[34] *Massachusetts* v. *Mellon*, 262 U. S. 447, 480; *Carmichael* v. *Southern Coal Co.*, 301 U. S. 495.

[35] *Rapid Transit Corp.* v. *New York*, 303 U. S. 573.

act. The funds thus raised are in their nature a continuing appropriation for a specific purpose. * * * The federal government does not obtain title to the money but holds it in trust for the beneficiary—the state commission [in the case of the Territory of Hawaii the unemployment compensation board], which in turn is bound to administer it by the payment of benefits without diminution for administration purposes."[36]

2. Appellant contends that the Hawaii Welfare Act offends the due process clause of the fifth amendment of the Constitution in respect to property in that (a) the Territory has thereby attempted to levy a tax where it neither has jurisdiction over the person taxed nor the subject matter of the tax; and (b) that no benefit is afforded appellant under the Act for the reason that he as a nonresident cannot qualify as a recipient of its benefits. This last objection will be considered in connection with appellant's further contentions that the Act is discriminatory.

In the course of his argument appellant made the vague and indefinite suggestion that the jurisdiction to tax the income of nonresidents is coextensive with and no greater than the ability of the taxing power to collect the tax without extending its jurisdiction beyond its territorial boundaries. In that regard he said: "It [the tax] is in the nature of a proceeding in rem and the judgment obtained in such a tax case would not be a personal judgment against the individual but in the nature of a proceeding in rem. The principle of the jurisdiction over subject matter and its liability to processes of the state is merely an extension of the principle recognized in the leading case of Pennoyer vs. Neff, 95 U. S. 715." It can hardly be said that the suggestion as made is a serious presenta-

---

36 *Gillum* v. *Johnson*, 7 Cal. (2d) 744, 758, rehearing denied, 7 Cal. (2d) 744, 62 Pac. (2d) 1037.

tion of a point of law requiring the consideration of the court. The burden of showing that an Act of the legislature is unconstitutional is upon the party asserting it. (*In Re Taxation of Private Schools*, 10 Haw. 315; *Bishop* v. *Mahiko, ante*, pp. 608, 641.) We presume, as said by the court in the case of *Travis* v. *Yale & Towne Mfg. Co.*, 252 U. S. 60, 75, that the Territory may enforce payment "so far as it can by the exercise of a just control over persons and property within" the Territory, and that nonresidents within the jurisdiction are amenable to the same legal processes as those domiciled within the jurisdiction. In any event we expressly refrain from expressing any view upon the suggestion made considering the question of the taxing jurisdiction of the Territory to have been otherwise fully covered.

The power of the Territory to tax is extremely broad.[37] With certain exceptions with which we are not concerned, it is equally as broad as that possessed by the States. The exercise of the right to tax is an exercise of an attribute of sovereignty.[38] "All subjects over which the sovereign power of a State extends, are objects of taxation."[39] "These subjects [of taxation] are persons, property, and business."[40]

It is axiomatic that a State may not tax beyond the limits of its sovereignty.[41] But where, as here, the tax is imposed upon compensation received for personal services performed by an employee for an employer entirely within the Territory it cannot be said that the jurisdictional

---

[37] *Kitagawa* v. *Shipman*, 31 Haw. 726, 732, 54 F. (2d) 313, cert. den. 286 U. S. 543.

[38] *M'Culloch* v. *State of Maryland*, 4 Wheat. 316 (U. S.); *State Tax on Foreign-Held Bonds*, 15 Wall. 300 (U. S.).

[39] *M'Culloch* v. *State of Maryland, supra*, p. 429.

[40] *State Tax on Foreign-Held Bonds, supra*, p. 319.

[41] *M'Culloch* v. *State of Maryland*, 4 Wheat. 316 (U. S.); *Curry* v. *McCanless*, 307 U. S. 357.

limits of the Territory for taxation purposes have been exceeded.

The tax imposed by the Hawaii Welfare Act is a special income tax.[42] It is measured by the compensation received by an individual attributable to personal services performed by him within the Territory as an employee under the direction and control of an employer. Under the agreed statement of facts it is conceded that the compensation upon which the tax in question was imposed was received by the appellant for personal services performed by him entirely within the Territory as an employee under the direction and control of an employer. The Home Owners' Loan Corporation is unquestionably an "employer" within the meaning of that term as defined in section 1 (a) of the Act. No less clearly was the appellant an "employee."

The validity of the tax imposed by the Hawaii Welfare Act *qua* tax is not impugned. The Territory unquestionably possesses the right and authority to impose a tax upon employment within the Territory by citizens or residents of the Territory measured by compensation received. The taxation-benefit doctrine gives such tax ample constitutional support. It is the validity of the Act applied to a nonresident temporarily residing in the Territory that is assailed. But in reason and authority we see no difference in principle between the reciprocal relations existing between the Territory and its citizens or residents on the one hand and the Territory and nonresidents on the other in respect to employment, the services of which are performed by the latter entirely within the Territory. The situs of the employment and compensation is the Territory of Hawaii. Nonresident employees, similarly

---

[42] *United States* v. *Hudson*, 299 U. S. 498; *Helvering* v. *Davis*, 301 U. S. 619, 634.

as citizen or resident employees, while in the Territory, are subject to its sovereignty and control. Nonresidents while employed within the Territory receive the same protection in respect to person and property as afforded citizens or residents. Under the circumstances no legitimate reason exists why a nonresident, while pursuing his employment within the Territory, should not respond to the reciprocal duty imposed upon citizens or residents, of contributing to the support of social activities of the Territory to the extent at least of a tax upon compensation received for services rendered entirely within the Territory. There is no claim that the burden imposed by the tax upon nonresidents is more onerous than that imposed upon citizens or residents of the same class.

Obviously the source of the compensation is immaterial. The tax is upon employment, the services of which are rendered entirely within the Territory, and the compensation received therefor is simply the measure of the tax. To follow appellant's argument to its logical conclusion, evasion of the tax could be accomplished by the mere expediency of the contract of employment providing for payment of compensation outside of the Territory. Appellant, in support of his contention that nonresidents such as the appellant are not subject to the Hawaii welfare tax, cites cases in which domicile is the test of the validity of the Act.[43] In these cases, however, the tax imposed was an income tax upon income which accrued outside of the taxing State. In this class of cases the test of validity is the domicile of the taxpayer. The rationale of validity is the correlation existing between taxation and the protection afforded by the domiciliary State. But the situation in the instant case is entirely different. The activity

---

[43] *Lawrence* v. *State Tax Comm.*, 286 U. S. 276, 279, and cases cited; *Newport Co.* v. *Tax Comm.*, 219, Wis. 293, 261 N. W. 884, 888; *Hart* v. *Tax Commissioner*, 240 Mass. 37, 40.

882

giving rise to the imposition of the tax is exercised within the taxing jurisdiction and the test of the validity is not the domicile of the author of the activity but whether the tax comes within the sovereign power of the State in respect to subjects of taxation within the State. If the tax may be lawfully levied upon an activity, the author of which is a resident of the State, it possesses similar power to levy a similar tax upon a similar activity, the author of which is a nonresident and temporarily within the State. In the final analysis it is a question of the power of a State in respect to the subjects of taxation within the State. Just as the Territory may impose a tax upon compensation received by citizens and residents for services rendered by them entirely within the Territory as employees it may levy a duty of like character and not more onerous in its effect upon compensation received by nonresidents for services similarly rendered by them.

As said by Mr. Justice Pitney in *Shaffer* v. *Carter*, 252 U. S. 37, 52: "We deem it clear, upon principle as well as authority, that just as a State may impose general income taxes upon its own citizens and residents whose persons are subject to its control, it may, as a necessary consequence, levy a duty of like character, and not more onerous in its effect, upon incomes accruing to non-residents from their property or business within the State, or their occupations carried on therein." In the case of *Travis* v. *Yale & Towne Mfg. Co.*, *supra*, p. 75, the author of the decision in the *Shaffer* case, again speaking for the court, said: "That the State of New York has jurisdiction to impose a tax of this kind upon the incomes of non-residents arising from any business, trade, profession, or occupation carried on within its borders * * * and that such a tax, so enforced, does not violate the due process of law provision of the Fourteenth Amend-

ment, is settled by our decision in *Shaffer* v. *Carter*, this day announced."[44]

Appellant attempts to draw an analogy between the status of the appellant as a nonresident in respect to local taxes and the status of a nonresident owner of land subjected to betterment assessment. And he cites in support thereof the cases of *Norwood* v. *Baker*, 172 U. S. 269; *Dewey* v. *Des Moines*, 173 U. S. 193; and *Asberry* v. *Roanoke*, 91 Va. 562, 566, 22 S. E. 360. The *Norwood* case has no application. It was a case of the assessment of the cost of street improvements in which the abutting lot owner was a resident of the jurisdiction. The sole question decided was whether the cost of a public improvement should be exacted from the owner of private property in substantial excess of the special benefits accruing to him. In the *Dewey* case the constitutionality of a law of Iowa was involved which permitted the expenses of state improvements to be assessed upon the abutting property and made the lot owner personally liable for its payment. It appears that the lot owner was a nonresident of the State of Iowa; that he had no personal notice or knowledge of the assessment proceeding; that the assessment imposed was in excess of the value of all of the lots subject thereto; and that he was never served with process in the proceeding in which personal judgment against him for the amount of the assessment was secured. The court held: "A judgment without personal service against a non-resident is only good so far as it affects the property which is taken or brought under the control of the court or other tribunal

---

[44] See also *Jackling* v. *State Tax Commission*, 40 N. M. 241, 58 Pac. (2d) 1167; *Cerf* v. *Lynch*, 261 N. Y. S. 231, affirmed 262 N. Y. 549, 188 N. E. 59; *People* v. *Graves*, 293 N. Y. S. 625, affirmed 275 N. Y. 599, 11 N. E. (2d) 773; *People* v. *Graves*, 297 N. Y. S. 967; *McCarty* v. *Tax Comm.*, 215 Wis. 645, 255 N. W. 914, 915; *People ex rel. Stafford* v. *Travis*, 231 N. Y. 339, 346; *People* v. *State Tax Commission*, 217 N. Y. S. 669.

in an ordinary action to enforce a personal liability, and no jurisdiction is thereby acquired over the person of a non-resident further than respects the property so taken." (p. 203.) The court, however, recognized the right of the State to tax persons within the State in the following language: "The jurisdiction to tax exists only in regard to persons and property or upon the business done within the State, and such jurisdiction cannot be enlarged by reason of a statute which assumes to make a non-resident personally liable to pay a tax of the nature of the one in question. All subjects over which the sovereign power of the State extends are objects of taxation. Cooley on Taxation, 1st ed. pp. 3, 4; Burroughs on Taxation, sec. 6. The power of the State to tax extends to all objects within the sovereignty of the State. (Per Mr. Justice Clifford, in *Hamilton Company* v. *Massachusetts*, 6 Wall. 632, at 638.)" (p. 203.) The *Asberry* case involved the constitutionality of a section of the charter of the city of Roanoke, which declared that assessments for street improvements constituted a personal debt of the owner of the property, against which the same had been assessed, which might be enforced by a bill of chancery, suit or motion. No question of nonresidence was involved but the distinction between ordinary taxes and assessment for betterments was recognized in the following language: "In the case of ordinary taxes, no sufficient reason exists why those on land should not be made a personal charge against the owner, if he is a resident and has the usual opportunity to be heard. The taxes are not so much assessed in respect to the particular land, as the value of the particular land is taken as the measure of the owner's duty to the State. He is not taxed in consideration of State protection to that particular item of property, but he is taxed for the general protection which the State affords to his life, his liberty, his family and social rela-

tions, his property and the various privileges the law grants to him. If the tax measured by the property should, in its enforcement, take from him more than that property is worth, it would not follow that the State had taken beyond the equivalent rendered. Indeed, the contrary would be almost certainly the fact. It is different in a case of an assessment made upon the basis of a benefit. Such an assessment regards nothing but the benefits to be conferred upon the particular estate. The levy is made on the supposition that that estate, having received the benefits of a public improvement, ought to relieve the public from the expense of making them. In such a case, if the owner can have his land taken from him for a supposed benefit to the land, which, if the land is sold for the tax, it is conclusively shown he has not received, and he then be held liable for the deficiency in the assessment, the injustice—not to say the tyranny—is manifest. But such a case is liable to occur if assessments are made a personal charge; and cases like it in principle, though less extreme in the injury they inflict, are certain to occur."

From what was said by the respective courts in the cases referred to, it is apparent that assessment for benefits is not a tax, as the latter term is ordinarily used in respect to taxes; that they do not support the analogy claimed; and, that in the final analysis they have no specific application to the situation existing in the instant case, due to the presence of the appellant within the taxing jurisdiction and the performance by him personally in the taxing jurisdiction of the services, compensation for which gave rise to the imposition of the tax.

3. The appellant further contends that the Hawaii Welfare Act is discriminatory for the reasons and upon the grounds (a) that by section 3(c) thereof, as amended, it exempts from taxation compensation received from the United States by officers and enlisted personnel for services

in the regular army, navy or marine corps of the United States; (b) that by section 4, paragraph A, of the Act it is incumbent upon all persons in receipt of compensation from the United States or an instrumentality thereof to file a return each month, failure of compliance with which constitutes a misdemeanor and may carry a penalty of twenty-five per cent of the tax, whereas no other individuals subject to the provisions of the Act, except persons who are in receipt of compensation from an employer who does not have a place of business in the Territory and does not have an agent in the Territory responsible for making returns, are required to make a return; and (c) that appellant could never hope to receive any of the benefits of the Act for the reasons (1) that he contributes to his own retirement fund; (2) that he could not become eligible for old-age assistance within the meaning of that term as employed in sections 12, 25 and 26 of Haw. Laws 1937, Act 242, Ser. D-164, as amended by Haw. Laws 1939, Act 238, § 2, pt. I, § 7, and pt. II, §§ 22 and 23; and (3) that he could not meet the residence requirement of those sections of the Act, as amended, which is a necessary prerequisite to the receipt of the special benefits therein provided.

A question of procedure requires preliminary attention.

Pending the hearing before the tax appeal court, the appellant filed an amended notice of appeal to that court from the assessment. This differed from his original notice of appeal to the tax appeal court by the addition of the fourth ground of the amended notice of appeal. (Specification of error number 4.) The Territory objected to such amendment but the objection was not ruled upon and the tax appeal court considered the notice of appeal as amended. The Territory now objects to a consideration of the fourth specification of error upon the ground that amendments of notices of appeal are only permitted in respect to appeals from assessments to a board of review,

citing R. L. H. 1935, § 1937, as amended by Haw. Laws 1939, Act 208, Ser. A-33, §§ 5, 8. It is true that in respect to the provisions of an appeal from an assessment to a board of review the statute expressly permits the amendment of a notice of appeal at any time prior to the board's decision, while in respect to appeals from assessment directly to the tax appeal court the statute is silent as to the right of amendment. But appeals to the supreme court from the tax appeal court are controlled not by the sections cited but by R. L. H. 1935, § 1950, as amended by Haw. Laws 1939, Act 208, *supra*, § 12, which expressly provides that the appeal shall be considered and treated for all purposes as a general appeal and shall bring up for determination all questions of fact and all questions of law, including constitutional questions involved in the appeal, and that the notice of appeal may be amended at any time up to the final determination of the tax liability by the last court to which an appeal may be taken. The appeal and notice of appeal filed in this case is in the form of a general appeal and no grounds of appeal are stated therein. In the case of a general appeal the statement of the grounds of appeal are unnecessary. Appellant, in his opening brief, pursuant to rule 3 (d) of this court, specified the fourth ground of his amended notice of appeal to the tax appeal court as one of the errors upon which he would rely and hence he is entitled to urge in this court the constitutionality of the Hawaii Welfare Act upon the ground included as ground four of his specifications of error. To return to a consideration of the merits.

Neither in his notice of appeal to this court nor in his specifications of error or otherwise has the appellant attempted to specify the provisions of the Constitution or its amendments of which the alleged discriminatory features of the Hawaii Welfare Act are violative. Hence

we are not in a position to say whether the appellant contends that the alleged discriminations of which he complains are violative of the equal protection clause of the fourteenth amendment or the due process clause of the fifth. The fifth amendment of the Constitution does not contain any express provision guaranteeing equal protection of the law[45] and the Supreme Court of the United States has expressly refrained from admitting that the due process clause of the fifth amendment includes the concepts of the equal protection clause of the fourteenth, except where the discrimination "if gross enough is equivalent to confiscation."[46] Both parties, however, have treated the objections to the alleged discriminatory features of the Hawaii Welfare Act as coming within the inhibitions of the fifth amendment against the deprivation of property without due process of law or of the fourteenth amendment in respect to equality or both and while not conceding the assumption we shall give it equal indulgence.

That an income tax law exempts from taxation or excludes from its application incomes of particular classes of persons does not render the law objectionable upon the ground of inequality where reasonable ground exists for the exemption or exclusion and the classification rests upon some difference which bears a reasonable and just relation to the provisions of exemption or exclusion and is not arbitrary or unreasonable.[47] The legislature possesses a wide latitude in determining in its discretion to

[45] *Steward Machine Co.* v. *Davis*, 301 U. S. 548, 584; *LaBelle Iron Works* v. *United States*, 256 U. S. 377, 392; *Brushaber* v. *Union Pac. R. R.*, 240 U. S. 1, 24.

[46] *Steward Machine Co.* v. *Davis*, 301 U. S. 548, 585.

[47] *Kitagawa* v. *Shipman*, 31 Haw. 726, 732, 54 F. (2d) 313, cert. den. 286 U. S. 543; *Territory* v. *Toyota*, 19 Haw. 651, 226 U. S. 184; *Trust Company* v. *Treasurer*, 19 Haw. 262; *Territory* v. *Pottie*, 19 Haw. 99; *Robertson* v. *Pratt*, 13 Haw. 590.

whom partial or total exemption should be granted.[48] The Hawaiian Organic Act contains no provision limiting the power of the legislature in respect to exemption from taxation except such as may be implied from the inhibition against granting to any corporation, association or individual "any special or exclusive privilege, immunity, or franchise without the approval of Congress" and the express provision that "all rightful subjects of legislation" to which the legislative power extends shall not be "inconsistent with the Constitution and laws of the United States locally applicable."[49] Neither provisions, however, inhibit classification for tax purposes where such classification has a rational basis and is not arbitrary and unreasonable.[50]

The most widely cited authority upon legislative power of exemption is that of *Bell's Gap R'd Co.* v. *Pennsylvania,* 134 U. S. 232, 237, in which Mr. Justice Bradley, speaking for the court, said: "The provision in the Fourteenth Amendment, that no State shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions

---

[48] *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283, 293; *Bank of Miles City* v. *Custer County,* 93 Mont. 291, 19 Pac. (2d) 885; *City of Jackson* v. *Deposit. Guaranty Bank & Trust Co.,* 160 Miss. 752, 133 So. 195; *Williams* v. *Baldridge,* 48 Idaho 618, 284 Pac. 203.

[49] Hawaiian Organic Act § 55.

[50] *Robertson* v. *Pratt,* 13 Haw. 590, 600.

for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature, or the people of the State in framing their Constitution. But clear and hostile discriminations against particular persons and classes, especially such as are of an unusual character, unknown to the practice of our governments, might be obnoxious to the constitutional prohibition. It would, however, be impracticable and unwise to attempt to lay down any general rule or definition on the subject, that would include all cases. They must be decided as they arise. We think that we are safe in saying, that the Fourteenth Amendment was not intended to compel the State to adopt an iron rule of equal taxation. If that were its proper construction, it would not only supersede all those constitutional provisions and laws of some of the States, whose object is to secure equality of taxation, and which are usually accompanied with qualifications deemed material; but it would render nugatory those discriminations which the best interests of society require; which are necessary for the encouragement of needed and useful industries, and the discouragement of intemperance and vice; and which every State, in one form or another, deems it expedient to adopt." Equally instructive language is to be found in later cases decided by the same court. "It [the tax] may violate some provision of the State Constitution against unequal taxation; but the Federal Constitution imposes no restraints on the States in that regard." *Davidson* v. *New Orleans,* 6 Otto 97, 105 (U. S.). "Diversity of taxation, both with respect to the amount imposed and the various species of property selected either for bearing its burdens or for being exempt from them, is not inconsistent with a perfect uniformity and equality of taxation in the proper sense of those terms." *Pacific Express Com-*

*pany* v. *Seibert*, 142 U. S. 339, 351. "Suppose, for any fair reason affecting only its internal affairs, the State should see fit to wholly exempt certain named corporations from all taxation. Of course the indirect result would be that all other property might have to pay a little larger rate per cent in order to raise the revenue necessary for the carrying on of the state government, but this would not invalidate the tax on other property, or give any right to challenge the law as obnoxious to the provisions of the Federal Constitution." *Merchants' Bank* v. *Pennsylvania*, 167 U. S. 461, 463. "The rule [of equality guaranteed by section 1 of the fourteenth amendment] prescribes no rigid equality and permits to the discretion and wisdom of the State a wide latitude as far as interference by this court is concerned. * * * the State may distinguish, select and classify objects of legislation, and necessarily this power must have a wide range of discretion." *Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 283, 293, 294. "Considering the great diversity in these systems [of taxation] it would obviously have worked a marked revolution if the first section of the Fourteenth Amendment had been construed as compelling a cast iron rule of equal taxation." *Florida Central &c. R'd Co.* v. *Reynolds*, 183 U. S. 471, 476. "The power of the State in respect to the matter of taxation is very broad, at least so far as the Federal Constitution is concerned. It may exempt certain property from taxation while all other is subjected thereto. It may tax one class of property by one method of procedure and another by a different method." *Beers* v. *Glynn*, 211 U. S. 477, 484. "The State has a broad discretion as to tax exemptions." *Rogers* v. *Hennepin County*, 240 U. S. 184, 192. In speaking generally upon the exemption granted by the federal Social Security Act to employers of less than eight, Mr. Justice Stone said: "It is inherent in the exercise of the power

to tax that a state be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation. [Citing cases.] * * * This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation. [Citing cases.] * * * Like considerations govern exemptions from the operation of a tax imposed on the members of a class. A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it. [Citing cases.]" *Carmichael* v. *Southern Coal Co.*, 301 U. S. 495, 509. In speaking specifically upon the exemption under the Act of certain employers, he further observed: "It is arbitrary, appellees contend, to exempt those who employ agricultural laborers, domestic servants, seamen, insurance agents, or close relatives, or to exclude charitable institutions, interstate railways, or the government of the United States or of any state or political subdivision. A sufficient answer is an appeal to the principle of taxation already stated, that the state is free to select a particular class as a subject for taxation. The character of the exemptions suggests simply that the state has chosen, as the subject of its tax, those who employ labor in the processes of industrial production and distribution. Reasons for the selections, if desired, readily suggest themselves. Where the public interest is served one business may be left untaxed and another taxed, in order to promote the one * * *. The legislature may withhold the burden of the tax in order to foster what it conceives to be a beneficent enterprise. This Court has often sustained the exemption of charitable institutions * * * and exemption for the encouragement

of agriculture." (p. 512.) Mr. Justice Cardoza in reference to the exemption accorded employees under title VIII of the same Act had this to say: "The statute does not apply, as we have seen, to employers of less than eight. It does not apply to agricultural labor, or domestic service in a private home or to some other classes of less importance. Petitioner contends that the effect of these restrictions is an arbitrary discrimination vitiating the tax. The Fifth Amendment unlike the Fourteenth has no equal protection clause. * * * But even the states, though subject to such a clause, are not confined to a formula of rigid uniformity in framing measures of taxation. * * * They may tax some kinds of property at one rate, and others at another, and exempt others altogether. * * * They may lay an excise on the operations of a particular kind of business, and exempt some other kind of business closely akin thereto. * * * If this latitude of judgment is lawful for the states, it is lawful, *a fortiori*, in legislation by the Congress, which is subject to restraints less narrow and confining. *Quong Wing* v. *Kirkendall, supra.* The classifications and exemptions directed by the statute now in controversy have support in considerations of policy and practical convenience that cannot be condemned as arbitrary. The classifications and exemptions would therefore be upheld if they had been adopted by a state and the provisions of the Fourteenth Amendment were invoked to annul them. This is held in two cases passed upon today in which precisely the same provisions were the subject of attack, the provisions being contained in the Unemployment Compensation Law of the State of Alabama. *Carmichael* v. *Southern Coal & Coke Co.*, and *Carmichael* v. *Gulf States Paper Corp., ante*, p. 495. The opinion rendered in those cases covers the ground fully. It would be useless to repeat the argument. The act of Congress is therefore valid." (p. 584.)

3 (a). The exemption from taxation of compensation received from the United States by officers and enlisted personnel for services in the regular army, navy or marine corps of the United States, including the respective reserve corps of the United States, is not discriminatory. The relative administrative difficulty, inconvenience. and expense involved in the levy and collection of a tax have uniformly been held to be sufficient justification for the difference between the treatment of small incomes and that accorded to others.[51] The collection of the tax from the class exempted would necessarily be accompanied by great administrative inconvenience and expense. It would have to be collected from each individual member of the respective services included, since the United States cannot, under the Act, be required to withhold the tax at the source.[52] The number of commissioned officers in the armed forces of the United States is proportionately small. Relatively the aggregate of their pay and allowances is less than received by others in civil life possessing no greater qualifications nor length of service. Reserve officers are called out for field services at infrequent intervals and are not entitled to pay or allowances except when on active duty. (10 USCA § 361, 37 USCA § 23.) The aggregate of the pay and allowances granted the enlisted personnel is extremely small. This is said not in criticism but in extenuation of their exemption. Considerations other than money are involved. In addition to the ability to pay, the extent of protection or benefit afforded is also a consideration justifying classification.[53]

[51] *Citizens' Telephone Co.* v. *Fuller*, 229 U. S. 322; *Florida Central &c. R'd Co.* v. *Reynolds*, 183 U. S. 471, 480; *Carmichael* v. *Southern Coal Co.*, 301 U. S. 495, 511.

[52] *Buchanan* v. *Alexander*, 4 How. 20 (U. S.).

[53] *Reed* v. *Bjornson*, 191 Minn. 254, 253 N. W. 102, 108; *Opinion of the Justices*, 167 Mass. 599, 170 N. E. 800, 804; *Shaffer* v. *Carter*, 252 U. S. 37.

The respective services of the armed forces of the United States are self-sufficient, their posts, yards and cantonments subject to federal control. Domiciliary rights are restricted. Tours of duty are brief. Though a part of community life duty requires segregation divorcing them from the activities of civil life. The reciprocal duties and obligations in respect to taxation and protection do not exist in the same measure as ordinarily obtains between the State and its civil inhabitants. All of the services mentioned have their own retirement system. Honorably discharged soldiers and sailors of the United States as a class are not an uncommon subject of total or partial exemption from taxation. (*Inhabs. of Mechanic Falls* v. *Millett*, 121 Me. 329, 117 Atl. 93; *Debolt* v. *Dunkard School District*, 53 Pa. 214; *White* v. *City of Marion*, 139 Iowa 479, 117 N. W. 254; *Holliman* v. *Hawkinsville*, 109 Ga. 107, 34 S. E. 214; *Cornelius* v. *Pruet*, 204 Ala. 189, 85 So. 430.)

Other reasons for exemption are conceivable but if, for the reasons assigned or for any other conceivable reason consonant with fair and reasonable classification, the action of the legislature can be justified, the courts may not interfere. As said by Mr. Justice Stone in the *Carmichael* case: "A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the Constitution. In the nature of the case it cannot record a complete catalogue of the considerations which move its members to enact laws. In the absense of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the

legislative branch its rightful independence and its ability to function." (p. 510.)

3 (b). The claim that the requirements of paragraph A, section 4 of the Hawaii Welfare Act, in respect to returns by employees of instrumentalities of the United States and the provisions of section 8 of the Act, as amended, and section 15 imposing penalties for the failure of the employee to make such returns contravene the constitutional inhibitions against inequality, is also without merit.

No claim is made that the tax does not operate equally upon all persons included in the class of which the appellant is a member. No claim is made that the provisions of law in respect to returns by employees and penalties for failure so to do are discriminatory in respect to any member of that class. Nor has our attention been directed to any incident of the requirement depriving appellant of "property" or of "due process." Under the circumstances the appellant has no cause for complaint.

The provisions of law in respect to returns by employees and to the penalties imposed upon their failure to comply with the same are administrative measures included in the system adopted for the collection of the tax and not to its levy or assessment. The constitutional rule of uniformity in respect to taxation has application only to the levy and assessment of taxes and not to the mode of enforcing their payment.[54] The same may be said of the rule of equality as applied to taxation. "When assessed the tax may be collected in the manner the law shall provide; and this may be varied to suit the necessities of each case."[55]

---

[54] *Witherspoon* v. *Duncan*, 4 Wall. 210 (U. S.) ; *Tappan* v. *Merchants' National Bank*, 19 Wall. 490 (U. S.).

[55] *Tappan* v. *Merchants' National Bank*, *supra*, p. 505.

Equal protection of the law is not concerned with the mode and manner of collection of taxes. Obviously, where no legal obligation exists on the part of the employer to deduct the taxes at the source, it would be impossible for the taxing authorities, except with great inconvenience and expense, to personally inform themselves of the presence in the Territory of employees in respect of whom employers were not required under the law to deduct the tax at the source. Moreover, in the absence of such knowledge, loss in revenues would inevitably result. The requirement of a return by the employee himself under such circumstances is a simple and effective administrative expedient by which the taxing authorities are advised of the receipt of compensation subject to tax and, in the event of nonpayment, the persons liable therefor. The penalties attached to the failure to make returns are but a part of the system provided for the collection of the tax and their severity within limitations is something with which the courts are not concerned. The mode and manner of collection of taxes are matters entirely within the discretion of the legislature. "The mode of enforcing payment of taxes is wholly within legislative control."[56] Where, as here, the provisions of law giving rise to the claim of discrimination affect the mode and manner of the collection of the tax and not the equality of its levy or assessment, the constitutional inhibition against inequality is not infringed.[57]

An interesting case involving a regulation analogous to the provisions of the Hawaii Welfare Act requiring employees to make a return is that of *Mississippi State Tax Commission* v. *Flora Drug Co.*, 167 Miss. 1, 148 So. 373, 378. In that case a tobacco tax statute required retailers

---

[56] *Witherspoon* v. *Duncan*, 4 Wall. 210, 217 (U. S.).

[57] *Northwest Auto Co.* v. *Hurlburt*, 104 Ore. 398, 207 Pac. 161; *Ewert* v. *Taylor*, 38 S. D. 124, 160 N. W. 797.

purchasing from wholesalers not having permits to present tobacco to the nearest wholesaler having a permit to have stamps affixed. There the court said: "It is manifest from the history of the transaction that the system adopted by the Legislature has increased the state's revenues, and has aided the state in carrying out its policies of collecting the stamp tax upon such articles. The most that can be said of the transaction is that it is less convenient to some retailers than the former system, but this is answered by the fact that it is reasonable, and is an efficient cause of the state's gain in revenue, which could not be claimed under the old scheme, and, whenever a scheme devised affords a reasonable facility to the state in carrying out some agency or purpose, we cannot say it is arbitrary."

In respect to the penalties imposed the situation is very similar to that developed in the case of *Railway Co.* v. *Miami County,* 67 Kan. 434, 439, 73 Pac. 103. In that case the legislature prescribed a penalty for the nonpayment of taxes and the constitutionality of the provision was assailed upon the ground that the state constitution required "a uniform and equal rate of assessment and taxation" and that all laws of a general nature should "have a uniform operation throughout the state." There the court held: "The rules laid down in the constitution controlling the legislature in providing for a uniform and equal rate of assessment and taxation, and providing that all laws of a general nature shall have a uniform operation throughout the state, are not limitations on its power to fix a penalty for the non-payment of taxes, or a limitation on it in fixing different penalties for the non-payment of taxes on different kinds of property. It is within the knowledge of all that there is more danger of the state's losing its taxes on personal than on real property. This of itself is a sufficient reason, if one need be given, why

different penalties should be provided for the non-payment of taxes on these different kinds of property. There is no constitutional inhibition on the legislature's fixing any penalty for the non-payment of taxes. There is no distinction between the penalties attached for the non-payment of taxes on different classes of personal property. In this respect the law has a uniform operation throughout the state; it operates on all alike, and is, therefore, not subject to the criticism made on it."

Under a statute of Wisconsin different penalties for nonpayment of taxes were imposed upon different classes of taxpayers. In sustaining the Act the Supreme Court of the United States said: "As to the particular means taken to enforce the collection of taxes, one rule may be adopted in respect of the admitted use of one kind of property and another in respect of the admitted use of another, in order that all may be compelled to contribute their proper share to the burdens of government. * * * The amount of the penalty was a matter for the legislature to determine in its discretion, and the Supreme Court refers to the imposition of penalties in other instances under the statutes of Indiana, varying according to particular subjects of taxation, apparently calculated to operate with quite as much harshness."[58]

Appellant cites the case of *Bachrach* v. *Nelson*, 349 Ill. 579, 182 N. E. 909, in support of his claim that the provisions of the Hawaii Welfare Act are discriminatory in respect to returns to be filed by employees. In that case the constitutionality of an income tax law was assailed upon the ground, among others, that one of the sections of the Act prescribed an additional penalty for the failure of nonresidents to file an income tax return. The section complained of required a nonresident to file

---

[58] *Western Union Telegraph Co.* v. *Indiana*, 165 U. S. 304, 309. (See also *King* v. *Mullins*, 171 U. S. 405, 435.)

a return of his income not only from sources in Illinois but also from sources outside of the State. His failure to file such return, whether willful or fraudulent, resulted in a denial to the nonresident of all deductions authorized by the Act, including ordinary and necessary expenses, interest paid, taxes paid to the United States and to other governmental bodies, losses, etc. In addition to this the nonresident was subjected to all of the penalties of fine and imprisonment to which the resident of Illinois was subjected. This was held to be a discrimination against nonresident taxpayers and in violation of section 1 of the fourteenth amendment of the federal Constitution on the ground that it denied to the nonresident equal protection of the law of Illinois and did not guarantee to the nonresident the same privileges and immunities as were given to the citizens of that State. Obviously this case is not applicable to the instant case. Under the Hawaii Welfare Act there is no discrimination whatsoever as to penalties.

3 (c). The objections to the constitutionality of the Hawaii Welfare Act, upon the grounds that appellant could never hope to receive any benefits of the Act for the reasons, first, that he contributes to his own retirement fund, and, second, that he could not meet the indigency and residence requirements of the Act, as amended,[59] which are necessary prerequisites to the receipt of special benefits, resolve themselves into the single complaint of absence of future benefits to appellant.

Let us first consider the question from the standpoint of the relation of the tax to its objects as it immediately affects the appellant. Protection and payment of taxes are correlative obligations. And no doubt there are inequalities in the tax imposed by the Hawaii Welfare Act when measured by individual cases. But this is unavoid-

---

[59] See note 8.

able. "Perfect uniformity and perfect equality of taxation, in all the aspects in which the human mind can view it, is a baseless dream." *Head Money Cases*, 112 U. S. 580, 595. "The rule of equality * * * only requires the same means and methods to be applied impartially to all the constituents of each class, so that the law shall operate equally and uniformly upon all persons in similar circumstances." *Kentucky Railroad Tax Cases*, 115 U. S. 321, 337. "Nor in respect to taxation was the amendment [fourteenth amendment § 1] intended to compel the State to adopt an iron rule of equality; to prevent the classification of property for taxation at different rates; or to prohibit legislation in that regard, special either in the extent to which it operates or the objects sought to be obtained by it. It is enough that there is no discrimination in favor of one as against another of the same class." *Giozza* v. *Tiernan*, 148 U. S. 660, 662. "Absolute equality is impracticable in taxation, and is not required by the equal protection clause. And inequalities that result not from hostile discrimination, but occasionally and incidentally in the application of a system that is not arbitrary in its classification, are not sufficient to defeat the law." *Maxwell* v. *Bugbee*, 250 U. S. 525, 543.

Only a plain abuse of the power of classification for taxation purposes will justify judicial interference.[60]

A tax is not necessarily invalid because it is unequal. A taxpayer is bound to pay his proportion of the school tax although he has no children. Similarly a police tax although he has no property to be guarded or a road tax although he never uses the road.[61] Socially and economically the Territory under the Hawaii Welfare Act is merely the administrative agency performing the duty devolving

[60] *Norwood* v. *Baker*, 172 U. S. 269; *Union Transit Co.* v. *Kentucky*, 199 U. S. 194, 204.

[61] *Union Transit Co.* v. *Kentucky*, *supra*.

upon the appellant and others of the more fortunate of the community. And no doubt the percentage of those who never will require nor become eligible for relief afforded by the Hawaii Welfare Act was a consideration in originally fixing the rate of the tax and authorizing its subsequent reduction. In the case of *Dane* v. *Jackson*, 256 U. S. 589, 598, in reply to the objection of the plaintiff in error that he and other inhabitants of the city in which he lived were taxed for the exclusive benefit of inhabitants of other divisions of the State, contrary to the due process clause and the equal protection clause of the fifth and fourteenth amendments, respectively, the court said: "While the nature of the subject does not permit of much finality of general statement, it may plainly be derived from the cases cited that since the system of taxation has not yet been devised which will return precisely the same measure of benefit to each taxpayer or class of taxpayers, in proportion to payment made, as will be returned to every other individual or class paying a given tax, it is not within either the disposition or power of this court to revise the necessarily complicated taxing systems of the States for the purpose of attempting to produce what might be thought to be a more just distribution of the burdens of taxation than that arrived at by the state legislatures (4 Pet. 517; 15 Wall. 319; 109 U. S. 400; 185 U. S. 371, *supra*); and that where, as here, conflict with federal power is not involved, a state tax law will be held to conflict with the Fourteenth Amendment only where it proposes, or clearly results in, such flagrant and palpable inequality between the burden imposed and the benefit received, as to amount to the arbitrary taking of property without compensation—'to spoliation under the guise of exerting the power of taxing.' (134 U. S. 237; 173 U. S. 615; 239 U. S. 220, *supra*.) For other inequalities of burden or other abuses of the state power of taxation, the

only security of the citizen must be found in the structure of our Government itself. So early as 4 Pet. 563, *supra,* it was said by Chief Justice Marshall: 'This vital power (of taxation) may be abused; but the Constitution of the United States was not intended to furnish the corrective for every abuse of power which may be committed by the state governments. The interest, wisdom and justice of the representative body, and its relations with its constituents, furnish the only security, where there is no express contract, against unjust and excessive taxation; as well as against unwise legislation generally.' " In the case of *Newark Fire Ins. Co.* v. *State Board,* 307 U. S. 313, 323, Mr. Justice Frankfurter said: "Wise tax policy is one thing; constitutional prohibition quite another. The task of devising means for distributing the burdens of taxation equitably has always challenged the wisdom of the wisest financial statesmen. Never has this been more true than today when wealth has so largely become the capitalization of expectancies derived from a complicated network of human relations. The adjustment of such relationships, with due regard to the promotion of enterprise and to the fiscal needs of different governments with which these relations are entwined, is peculiarly a phase of empirical legislation. It belongs to that range of the experimental activities of government which should not be constrained by rigid and artificial legal concepts. Especially important is it to abstain from intervention within the autonomous area of the legislative taxing power where there is no claim of encroachment by the states upon powers granted to the National Government. It is not for us to sit in judgment on attempts by the states to evolve fair tax policies. When a tax appropriately challenged before us is not found to be in plain violation of the Constitution our task is ended." An extreme case is that of *Rapid Transit Corp.* v. *New York,* 303 U. S. 573,

585, in which a tax of the State of New York imposed on transit companies was upheld despite the fact that the revenues raised by the tax were committed by the tax Act itself to the relief of unemployment. "If the designation of utilities as the only taxpayers under the legislation in question does not deny to them the equal protection of the laws, the fact that an appropriation of the funds for relief is a part of the legislation is not significant. 'A tax is not an assessment of benefits.' *Carmichael* v. *Southern Coal & Coke Co.*, 301 U. S. 495, 522. Taxes are repeatedly imposed on a group or class without regard to responsibility for the creation or relief of the conditions to be remedied. *Idem*, note 14, p. 522." (See also the cases cited in the margin.)[62]

Holding as we do that the tax imposed is not unconstitutional by reason of the absence of present direct benefits to the appellant little need be said in respect to the objection that there is no likelihood of future benefits as far as the appellant is concerned. Our attention has not been directed to any specific provision of law supporting appellant's claim that he contributes to his own retirement fund nor are we advised of the legal rights of the beneficiaries thereunder which permit him to assert the impossibility of his ever becoming eligible for old-age assistance under the Hawaii Welfare Act. Nor are we persuaded that he could not meet the residence requirement to entitle him to the benefits of the Act. Whether he becomes a resident of the Territory is optional with himself. Much may be said of the charms of his native State and the advantages of citizenship thereof. A visitor to the Territory was once heard to remark, however, that

---

[62] *Carley & Hamilton* v. *Snook*, 281 U. S. 66, 71; *Nashville, C. & St. L. Ry.* v. *Wallace*, 288 U. S. 249, 268; *Carmichael* v. *Southern Coal Co.*, 301 U. S. 495, 521; *Cincinnati Soap Co.* v. *U. S.*, 301 U. S. 308; *Inter-Island Co.* v. *Hawaii*, 305 U. S. 306.

Hawaii had everything California thought she had. Moreover the advantages of citizenship are relative. And there is nothing to prevent the appellant from acquiring the necessary residential qualifications. All of these matters are entirely within his control. But assuming *arguendo* all of appellant's claims of impossibility of future enjoyment of benefits under the Hawaii Welfare Act to have support legally and factually, none of the objections advanced involved the validity of the tax. That the appellant from considerations of his own may never enjoy the benefits of the Act as an argument against its constitutionality is as unreasonable as the argument that the legislature may in its discretion at some future time repeal the Act.

The views herein expressed dispose of all of the errors assigned, which are entitled to consideration, and pursuant thereto the decision of the tax appeal court is affirmed.

*W. C. Moore* (*F. A. Pollock* with him on the briefs) for the taxpayer.

*R. V. Lewis,* Deputy Attorney General (*J. V. Hodgson,* Attorney General, and *E. K. Kai,* Assistant Attorney General, with her on the brief), for the tax commissioner.